**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————————

**KATHRYN S. SEVER,**

                                **Plaintiff,**

     **-against-**                                           **10-CV-774**

**THE BOARD OF EDUCATION OF THE MAINE-**
**ENDWELL CENTRAL SCHOOL DISTRICT and**
**JOSEPH F. STONER, individually and in his official**
**capacity as Superintendent of Schools,**

                                **Defendants.**
————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                           **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and

New York state law.  See Am. Compl. dkt. # 5.  After filing an Answer, dkt. # 8, Defendants

moved to dismiss various claims pursuant to Rule 12 of the Federal Rules of Civil

Procedure. Dkt. # 10.  Plaintiff opposes the motion, dkt. # 11, and Defendants filed a reply

brief.  Dkt. # 12.  For the reasons that follow, the motion is granted in part and denied in

part.

**II.     STANDARD OF REVIEW**

        Defendants initially moved pursuant to Fed. R. Civ. P. 12(b)(6) but acknowledged in

their Reply Memorandum of Law that, because they had filed an Answer before filing the

dismissal motion, the motion should have been brought pursuant to Fed. R. Civ. P. 12(c).

Inasmuch as "[t]he standard for addressing a Rule 12(c) motion for judgment on the

pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a

claim," Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006), there is no prejudice

to Plaintiff by treating the motion as one brought pursuant to Rule 12(c).

As indicated in Cleveland v. Caplaw Enter., a Rule 12(c) motion is governed by the

Rule 12(b)(6) standard of review.  Motions to dismiss pursuant to Rule 12(b)(6) test the

legal sufficiency of a complaint. Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). "The issue

is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to

offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d

Cir.1998).  Accordingly, the Court must accept the factual allegations in the complaint as

true, and "draw all reasonable inferences in favor of the plaintiff." Bolt Elec., Inc. v. City of

New York, 53 F.3d 465, 469 (2d Cir. 1995); see Burns v. Trombly, 624 F. Supp.2d 185,

196 (N.D.N.Y. 2008)(same).

"'[A]lthough a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'"

Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009)).  To withstand a Rule 12(b)(6) motion, a "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 129 S. Ct. at 1949-50 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. (citing Twombly, 550 U.S. at 557).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts "that are 'merely consistent with' a defendant's liability [] 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

 "[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris, 572 F.3d at 72 (citing Iqba, 129 S. Ct. at 1950).  Review is "limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Medtech Prods. v. Ranir, LLC, 596 F. Supp.2d 778, 802 (S.D.N.Y. 2008) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 190 (2d Cir. 2007)); see Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)(the court may review documents integral to the Complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the Complaint as exhibits and any statements or documents incorporated into the Complaint by reference).

## III.    BACKGROUND[1]

Plaintiff began her employment with the Maine-Endwell Central School District (the "District") over 20 years ago as a secondary assistant principal.   On July 1, 1999, Plaintiff was appointed as the Director of Education for grades K-5.  In May 2001, the Board of Education of the Maine-Endwell Central School District School (the "Board") added grades

---

[1]The facts set forth in the text are taken from the Amended Complaint.

3

6-12 under Plaintiff's supervision as Director of Education.  Plaintiff was appointed as the

District's Assistant Superintendent for Instruction effective July 2002.

In June of 2004, Plaintiff entered an employment agreement with the Board (the

"Agreement").[2]  The Agreement provided for successive one-year terms of employment

(defining her work year from July 1 to June 30); set forth the duties and responsibilities of

her position; set forth her compensation; provided for annual evaluations; defined the

nature and acceptable uses of her benefits; and defined the agreement renewal process

and procedure.  On her last performance evaluation, Plaintiff received a "3+++" on a scale

that has a "3" as the highest numerical value obtainable.

The District had a practice of purchasing back unused leave time for other District

administrators and the Superintendent.  However, it refused to purchase unused leave

time from Plaintiff.  In the Spring of 2008, Superintendent Joseph F. Stoner asked Plaintiff

to provide a proposal to the Board on the issue of the District buying back Plaintiff's

unused leave time. She submitted such a proposal in May 2008.  After a Board meeting in

May 2008, Stoner informed Plaintiff that the Board had agreed to buy back her sick days,

but only if she would (a) provide immediate written notice of her intent to retire, and (b)

replace the family health insurance coverage guaranteed by her employment contract with

individual health insurance.[3]  Plaintiff declined that proposal because it would have

required her to retire when she was not yet ready to do so, and because it would have

significantly reduced the health insurance entitlement she was guaranteed under her

---

[2]The Agreement between Plaintiff and the Board, dated June 11, 2004 with addendums for the years 2005, 2006 and 2008, is annexed to the Amended Complaint as Exhibit "B."

[3]A copy of the memo from Superintendent Stoner dated May 29, 2008 is annexed to the Amended Complaint as Exhibit "C."

employment contract.

Plaintiff also discovered that the Board had agreed to buy back unused leave time of other, younger District administrators and members of the administrative cabinet but without the limitations that the Defendants were imposing on Plaintiff.   Moreover, the offer by the District to these younger administrators attached for as long as the administrator worked at the District whereas Plaintiff's conditional offer was only for the one year period before she was to retire.

On November 26, 2008, Stoner informed Plaintiff that he and the Board were giving Plaintiff the following options:

a.      *"You could submit a letter of resignation for retirement purposes to the board of education in a timely manner so that a decision could be made on your replacement, if there would be one;"*

b.      *"The board of education could choose to eliminate your position for economy and efficiency purposes. Being that you are the only person in this tenure area, you would not have any bumping rights to other positions in the district;"*

c.      *"You could continue working in this position. However, because of your raises of five percent for each of the past three years, there would no raise for the 2009-10 school year.*"

Plaintiff did not resign and continued to work for the District.  Approximately four months later on March 25, 2009, Plaintiff received a letter from Stoner informing her that he intended to recommend to the Board that her position be eliminated for "economic and efficiency reasons" effective July 1, 2009.[4]   Additionally, the letter set a deadline for Plaintiff to submit a resignation and stated that, if she did not resign by that deadline, "your

_____

[4]A copy of that letter is annexed to the Amended Complaint as Exhibit "D."

position will be one of those cut or not filled in the 2009-2010 budget."

At the May 28, 2009 Board meeting, the Board passed a resolution to abolish

Plaintiff's position.  Plaintiff alleges that

> [a]s a final act of indignity and to humiliate Plaintiff publically, the Board
> removed the abolishment vote from the consent agenda and held a roll call
> vote instead, while Plaintiff was present at the meeting. This act of
> humiliation was intended to be as public as possible and was clearly meant
> to be personal to Plaintiff. Several colleagues and the District clerk came up
> to Plaintiff and expressed their concern for how the matter was handled.

Am. Compl.  ¶ 34.

Plaintiff's last day of work for the District was July 1, 2009.  Plaintiff contends that

"the District never really eliminated plaintiff's position.  Although an administrative position

in the District was eliminated, it was an assistant principal's position, not Plaintiff's." Id. ¶

32.   Plaintiff also contends that the Board refused to recognize her bumping rights relative

to other administrators with less seniority despite that she was the senior administrator in

her tenure area.

On June 4, 2009, Plaintiff wrote to Superintendent Stoner to "request a copy of any

materials that set forth how the District plans to reassign the duties of my position to other

positions."  The District's attorney informed Plaintiff on June 15, 2009 that "*[t]hese plans

are still subject to revision and are not yet final*."   On August 3, 2009, Plaintiff renewed her

request but she never received the requested information.

At the August 5, 2009 School Board meeting, the Board unanimously approved the

creation of the new District position of Director of Leadership, Learning and Accountability.

Plaintiff was neither offered the newly created position nor placed upon a preferred

eligibility list of candidates for any vacancy existing or which was thereafter created. The

position was awarded to another person.  Plaintiff asserts that the holder of this position

performs the same duties and responsibilities she performed in her abolished position and

that the person works in Plaintiff's office at the District.

Plaintiff contends that Defendants abolished her position as a subterfuge to force

her out of her employment and to award the position to another.  She maintains that this

conduct: (1) deprived her of her property interest (her contractual employment and tenure

rights) and her liberty interest (her good name, reputation and right to pursue her chosen

career) without due process of law (First Cause of Action); (2) constituted unlawful

retaliation because she refused to relinquish her property and liberty interests (Second

Cause of Action); (3) breached her employment contract (Third Cause of Action); (4)

violated New York State Education Law §2510 (Fourth Cause of Action); (5 & 6) violated

New York Executive Law §296, *et seq.* by treating her differently than similarly situated

younger school administrators (Fifth and Sixth Causes of Action);[5] (7) constituted the

negligent infliction of emotional distress (Seventh Cause of Action); (8) constituted the

intentional infliction of emotional distress (Eighth Cause of Action); and (9) constituted a

prima facie tort (Ninth Cause of Action).

## IV.    DISCUSSION

The Court will address Defendants' arguments for dismissal *seriatim*.

### a.  Property Interest

Defendants move to dismiss Plaintiff's first cause of action which alleges a

deprivation of a property and a liberty interest without due process of law.  As to the

_____

[5]The Fifth Cause of Action is brought against the Board as Plaintiff's former employer, the Sixth
Cause of Action is brought against Stoner as an aider and abettor of an unlawful discriminatory practice.

property interest claim, Defendants argue:

> While the state Education Law undeniably applies constitutional due process protections to disciplinary actions against tenured educators, it does not raise abolishment to the same level of constitutional importance. Abolishment requires no notice or hearing, and does not impact tenure in the same ways as a disciplinary suspension or a termination for cause. Upon abolishment, the Education Law only grants the excessed educator a conditional preference to fill a new position. There is no legitimate claim of entitlement to "continued employment."

Def. MOL pp. 2-3.

Defendants' legal proposition may be correct but the allegations in the Amended Complaint, if true, are sufficient to establish that Defendants took action intended to deprive Plaintiff of her tenured position without any pre-deprivation process and with the intention of awarding the same position (albeit with a different title) to someone else. Plaintiff asserts, in essence, that the Board sidestepped the New York Education Law's notice and hearing provisions for tenured employees by the subterfuge of calling her dismissal a position abolishment.  Under the facts alleged in the Amended Complaint, a jury could conclude that Plaintiff's position was not truly "abolished," but rather that the Board engaged in the pretext of abolition for the purpose of circumventing Plaintiff's due process right to a pre-deprivation hearing.  These allegations are sufficient to withstand a Rule 12(c) motion to dismiss the property interest/deprivation of due process claim. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)(An essential principle of due process is that the deprivation of a protected right must "be preceded by notice and

8

opportunity for hearing appropriate to the nature of the case."); Gould v.Board of Educ.,

81N.Y.2d 446, 451(1993)(Under New York law, a tenured teacher or administrator has a

"protected property interest in her position and a right to retain it subject to being

discharged for cause in accordance with the provisions of [the Education Law]."); Blum v.

Schlegel, 18 F.3d 1005, 1014 (2d Cir. 1994)("Tenure, once conferred, is a property

interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.")

(citations omitted); Adams v. N.Y. State Educ. Dep't,  2010 WL 624020 at *30 (S.D.N.Y.

Feb. 23, 2010)(Peck, M.J.)(Plaintiffs' status as tenured teachers provides them with a

constitutionally protected property interest in their continued employment and is sufficient

to trigger their due process rights.)(and cases cited therein).

    By the same reasoning, a "post-abolition Article 78 proceeding" may not be the

"proper method of seeking relief" as Defendants argue.  Such a post-deprivation

procedure would be sufficient only if Plaintiff's position was abolished for legitimate

reasons and there was not a similar position filled by the Board. See Elmendorf v. Howell,

962 F. Supp. 326, 332 (N.D.N.Y. 1997);[6] DeSimone v. Bd. of Educ., Huntington Union

Free Sch. Dist., 604 F. Supp 1180, 1181-83 (E.D.N.Y. 1985);[7] see also Elmendorf and

---

[6]

After a review of the relevant case law, the Court cannot find as a matter of law that the
plaintiff was not entitled to a pre-termination hearing. Although it seems clear that under New
York law, when a position held by a tenured individual is abolished no pre-termination hearing
is required, the Court finds that when there is a question of fact as to the similarity of the
subsequently created position, the Court should not dispose of a concomitant due process
claim on summary judgment.

Elmendorf, 962 F. Supp. at 332 (citations omitted).

[7]

Plaintiff can prove that [she] has been deprived of property without due process if [she]
demonstrates either (1) that at the time of the plaintiffs discharge there existed genuine
factual issues bearing upon the similarity or dissimilarity of the positions; or (2) that at the

(continued...)

9

DeSimone with Fairbairn v. Bd. of Educ. of South Country Cent. Sch. Dist., 876 F. Supp. 432, 435 (E.D.N.Y. 1995) (denying a federal procedural due process claim for denial of a pre-abolition hearing where the plaintiff failed to show that the allegedly "similar" position to which she claimed entitlement was "created concurrently with the abolishment of her former job").  As indicated above, however, the facts alleged in the Amended Complaint are sufficient for a jury to conclude that the District "abolished" Plaintiff's position in name only and with the contemporaneous intention of filling it with another person.  Despite that the Director of Leadership, Learning and Accountability position was not created (and filled) until several weeks after Plaintiff's position was abolished, the facts are susceptible to the reasonable inference that Defendants intended at the time that Plaintiff's position was abolished that they would create a new, similar position and fill it with another person.  Indeed, a reasonable inference could be drawn that as early as May 2008,[8] and again on November 26, 2008,[9] the District was signaling its intention to do exactly what Plaintiff alleges that it did – force her out of work and fill her position with another person.  See Def. Reply MOL p. 2 ("[I]t is plausible to believe that a school district, knowing of a senior

---

[7](...continued)
time of plaintiff's discharge it could be said as a matter of law that the positions were similar within the meaning of Education Law § 2510(1). Defendant can prove that there was no deprivation of property without due process if it can show that at the time of the discharge it could be said as a matter of law that the positions were not similar within the meaning of Education Law § 2510(1).

DeSimone, 604 F.Supp. at 1184.

[8]May 2008 is when Stoner informed Plaintiff that the Board had agreed to buy back her sick days, but only if she would (a) provide immediate written notice of her intent to retire, and (b) replace the family health insurance coverage guaranteed by her employment contract with individual health insurance.

[9]On November 26, 2008, Stoner informed Plaintiff that she had three options: (1) retirement in which case she would be replaced; (2) abolition of her position in a manner that would leave her without bumping rights; or (3) continued employment without increase in pay.

administrator's agreed-upon retirement three years in advance, would make long-term

budget and staffing plans that involved parsing out the administrator's duties to other

employees. It is also plausible that the school district would not be able to undo those

plans (and find an extra $120,000 per year to continue paying the administrator's salary) in

the event the administrator suddenly decided not to retire at the time she previously

announced she would.").  Should Plaintiff establish that Defendants intended to simply

replace her at the time her position was abolished, the post-deprivation Article 78

proceeding would be insufficient to afford Plaintiff due process.  See Boddie v.

Connecticut, 401 U.S. 371, 379 (1971)("[T]he root requirement" of the Due Process

Clause requires "that an individual be given an opportunity for a hearing *before* he is

deprived of any significant property interest.")(emphasis in original).  The motion to dismiss

this claim is denied.

### b.  Liberty Interest

Defendants also argue that Plaintiff has failed to allege facts sufficient to establish

an actionable claim for a deprivation of a constitutionally protected liberty interest.  The

Court agrees.

Plaintiff's deprivation of liberty interest claim is governed by the "stigma-plus" test.

See Adams v. New York State Educ. Dept., 2010 WL 3306910, at * 16 (S.D.N.Y. Aug. 23,

2010).[10]  The first prong of the stigma-plus test requires Plaintiff to demonstrate that

---

[10]    "A person's interest in his or her good reputation alone, apart from a more
tangible interest, is not a liberty or property interest sufficient to invoke the
procedural protections of the Due Process Clause or create a cause of
action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d
Cir. 2004); see, e.g., Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct.
1155,1160-61 (1976) ("While we have in a number of our prior cases pointed

(continued...)

Defendants made a stigmatizing statement that called into question Plaintiff's "'good name, reputation, honor, or integrity.'" Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510 (1971)).  Here, there is no allegation of any such statement but only that Plaintiff's position was abolished in a public forum while Plaintiff and her colleagues were present, and then, at a later time, the Board publically created a similar position that was awarded to another individual.  While Plaintiff might feel that the manner in which the Board abolished her position and awarded the new position to another was done to cast aspersions on her professional competence, the facts are insufficient to satisfy the first prong of the stigma-plus test.

> "[S]tigmatizing allegations . . . include charges going to professional competence when the charges are sufficiently serious." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 632 (2d Cir.1996), cert. denied, 519 U.S. 1150, 117 S.Ct. 1083 (1997).  However, "statement[s] that an employee poorly performed her duties or acted in an improper manner," LaForgia v. Davis, 01 Civ. 7599, 2004 WL 2884524 at *8 (S.D.N.Y. Dec. 14, 2004), or that describe behavior or actions that are "within the

---

[10](...continued)

> out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."). "[S]imple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment," O'Neill v. City of Auburn, 23 F.3d 685, 691 n. 2 (2d Cir.1994), "or alteration of some other right or status recognized by state law." Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.), cert. denied, 493 U.S. 816, 110 S. Ct. 66 (1989).  The legal standard for such liberty interest claim is commonly referred to as the "stigma plus" test. E.g., Velez v. Levy, 401 F.3d at 87; Neu v. Corcoran, 869 F.2d at 667.

Adams v. New York State Educ. Dept., 2010 WL 3306910, at * 16 (S.D.N.Y. Aug. 23, 2010)(footnotes omitted).

employee's power to correct," do not generally qualify as stigma for constitutional purposes. <u>Russell v. Hodges</u>, 470 F.2d 212, 217 (2d Cir.1972). A conclusory or nondescript unsatisfactory rating or negative report, by itself, could almost never support a "stigma plus" allegation. <u>See</u>, <u>e.g.</u>, <u>Martinez v. City of N.Y.</u>, 00 Civ. 7914, 2003 WL 2006619 at *7 (S.D.N.Y. Apr. 30, 2003) ("A negative report in an employment file with generalized statements about [plaintiff]'s interpersonal skills will not bar her from pursuing her chosen profession."), <u>aff'd</u>, 82 Fed. Appx. 253 (2d Cir. 2003); <u>see also</u>, <u>e.g.</u>, <u>Koehler v. N.Y. City</u>, 04 Civ. 6929, 2005 WL 3502042 at *3 (S.D.N.Y. Dec. 20, 2005) (Probationary employee's placement on ineligible list for future employment after being charged with corporal punishment does not constitute stigmatization where ineligible list does not publicly disclose grounds for dismissal.)

<u>Adams</u>, 2010 WL 3306910, at * 17 (footnote omitted).

The public statement that the Board was abolishing Plaintiff's position "for economy and efficiency purposes," even if not the real reason for the action, is a nondescript statement that does not subject Plaintiff to public opprobrium or that would negatively affect her ability to find other employment in her profession. Moreover, the way in which the position was abolished and another person awarded a similar position does not set forth a plausible basis to infer a stigmatizing statement. As such, the facts are insufficient to satisfy the first prong of the stigma-plus test by the Board. Therefore, the liberty deprivation claim is dismissed.

### c.  Retaliation Claim

Defendants move to dismiss Plaintiff's retaliation claim on the grounds that (1) Plaintiff  has not alleged that she engaged in any protected behavior, and (2) even if Plaintiff did engaged in protected behavior, there is no causation between her refusal to retire and the alleged adverse employment action. Plaintiff argues that she engaged in "protected activity" by refusing to retire, and that there is direct causation in that her position was abolished shortly after she informed defendants that she would not retire.

13

See Am. Compl. ¶¶ 44-49; Pl. MOL p. 19.

Although Plaintiff cites to Title VII jurisprudence to define the scope of review for her retaliation claim, she proceeds under § 1983, not Title VII.  Moreover, Plaintiff has not asserted that she challenged conduct by the employer that violated a protected interest under Title VII or any other federal anti-discrimination statute. See Cruz v. Coach Stores, 202 F.3d 560, 566 (2d Cir. 2000)("Protected activity" under the anti-discrimination laws is an "action taken to protest or oppose statutorily prohibited discrimination."); see also Hubbard v. Total Communs., Inc., 347 Fed. Appx. 679, 680-81 (2d Cir. 2009) (Protected activity "includes opposition to a discriminatory employment practice.").  While Plaintiff now contends that the employer's treatment of her was based upon considerations of her age in violation of New York law, there is no allegation that she complained to the employer or any other agency about the alleged age-based treatment.

Plaintiff also fails to allege facts sufficient to establish a Section 1983 retaliation claim.  "In general, a section 1983 claim will lie where the government takes negative action against an individual because of [her] exercise of rights guaranteed by the Constitution or federal laws." Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000). To state a viable § 1983 retaliation claim of the nature asserted here, Plaintiff must establish that (1) she was engaged in constitutionally protected conduct, and (2) the conduct was a substantial or motivating factor for the adverse action taken against her.  See Holmes v. Haugen, 356 Fed. Appx. 507, 508, 2009 WL 4798867, at *1 (2d Cir. Dec. 15, 2009); see also Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) ("In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a

14

substantial motivating factor for 'adverse action' taken against him by defendants.");

McQuilkin v. Central New York Psychiatric Center, 2010 WL 3765847, at * 14 (N.D.N.Y.

Aug. 27, 2010)("In order to state a prima facie claim under § 1983 for retaliatory conduct,

a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at

issue was protected; 2) the defendants took adverse action against the plaintiff; and 3)

there was a causal connection between the protected activity and the adverse action-in

other words, that the protected conduct was a "substantial or motivating factor" in the

[defendant's] decision to take action against the plaintiff.")(citing Mount Healthy City Sch.

Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) & Dillon v. Morano, 497 F.3d 247,

251 (2d Cir. 2007)).

However, Plaintiff has not asserted facts indicating that she engaged in

constitutionally protected speech or opposition.  Plaintiff merely alleges that she refused to

retire.  Plaintiff has not asserted that, in refusing to retire, she advised the employer that

she was invoking her constitutional right to due process in the event the employer sought

to terminate her.  Without specific allegations of speech or protest invoking a

constitutionally protected right – even if one existed - there is no plausible basis upon

which to conclude that Plaintiff engaged in "protected activity" that was the catalyst for the

asserted-deprivations. See MacPherson v. Town of Southampton,  --- F. Supp.2d ----,

2010 WL 3603128, at *11 (E.D.N.Y., Sept. 7, 2010)("In order to survive a motion to

dismiss, a claim of retaliation under Section 1983 'must be supported by specific and

detailed factual allegations,' not stated 'in wholly conclusory terms.'")(quoting Friedl, 210

F.3d at 85-86).

Furthermore, assuming that Plaintiff's refusal to retire constitutes protected

15

conduct, the allegations in the Amended Compliant are insufficient to establish a plausible casual connection between the protected conduct and the alleged retaliatory actions. The allegations in the Amended Complaint indicate that, from the inception of the facts relevant to the cause of action, Defendants treated Plaintiff differently than other administrators and intended to end her employment. These facts, even when construed in the light most favorable to Plaintiff, indicate that Defendants were motivated by some reason that pre-dated Plaintiff's refusal to retire and that, in the end, Defendants merely accomplished their original objective. It is implausible under the facts alleged that Plaintiff's refusal to accept Defendants' conditional retirement demand was the "cause" of or motivation for Defendants' decision to abolish her position and appoint another person to the newly-created administrators position. Simply stated, "[t]he alleged retaliatory action[s] . . . [have] a basis independent from any 'protected activity.'" Valtchev v. City of New York, 2010 WL 4595539, at *3 (2d Cir. Nov. 15, 2010). Thus, assuming that Plaintiff's refusal to retire constituted "protected activity," there is no plausible retaliatory causation. Accordingly, the retaliation cause of action is dismissed.

### d.   Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claim on the ground that the terms of the contract do not prohibit the abolition of Plaintiff's position. Defendants argue: "In reality, this cause of action simply re-alleged a claim for violation of tenure rights, but called itself a breach of contract claim. That is nonsensical, because none of Ms. Sever's rights under the Education Law derive from her employment contract." Def. MOL p. 17.

Plaintiff opposes the motion by arguing that the Agreement called for continued

employment until June 30, 2009, yet the Board abolished her position on May 29, 2009.
As such, she assets that the Board breached the Agreement by terminating her
employment before the end of the contractual term.  See Pl. MOL pp. 20-22.

   While the contract called for continued employment until June 30, 2009, the
undisputed facts are that Plaintiff's last day of employment was July 1, 2009.  Hence, the
Board's decision in May 2009 to end Plaintiff's employment on July 1, 2009 - after the
expiration of the contract term - does not amount to a breach of the Agreement but only an
indication that the Board would not agree to renew the contract.  Plaintiff's breach of
contract claim is dismissed.

   **e.  State Law Age Discrimination**

   Defendants argue that allegations in the Amended Complaint fail to establish a
*prima facie* case of age discrimination under New York law.   The Court disagrees.

   To establish a *prima facie* case of age discrimination under the New York's Human
Rights Law, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2)
she was qualified to hold the position; (3) she was terminated from employment or
suffered another adverse employment action; and (4) the discharge or other adverse
action occurred under circumstances giving rise to an inference of discrimination. Ferrante
v. American Lung Assn., 90 N.Y.2d 623, 629 (1997).   Plaintiff's Amended Complaint
alleges that she was 60 years old and the oldest administrator in the District office and
cabinet; that she most recently received an exemplarily performance evaluation; that
Defendants abolished her position as a pretext for discharging her; that she was replaced;
and that the true motivation for her discharge was consideration of her age.  See Am.

Compl. ¶¶ 17-18, 64-71.  Although Plaintiff does not allege that she was replaced by a younger individual, she does allege that she was treated differently than younger administrators from whom the school district bought back leave time without extra conditions. Id. ¶ 69-70.  Plaintiff also alleges that she was the oldest and most senior administrator yet was neither offered bumping rights into another administrative position nor considered for the newly created Director of Leadership, Learning and Accountability position.  From these facts is a fact finder could conclude that considerations of Plaintiff's age permeated the employer's treatment of her and was the motivation for the decision to eliminate her position.  At this stage, these allegations are sufficient to establish a *prima facie* case of age discrimination under New York law against the employer.

Because Plaintiff has a legally viable New York Human Rights Law discrimination claim against the employer, and because she asserts that Defendant Stoner participated in the discriminatory practice, she has a viable "aiding and abetting" claim against him. See N.Y. Exec. L. § 296(6);  Rojas v. Roman Catholic Diocese of Rochester, 2010 WL 3945000, at * 23 (W.D.N.Y. Oct. 6, 2010)("Under NYHRL § 296(6), an individual co-worker may be held liable as an aider and abettor, assuming that the employer is found liable under § 296(1). In this regard, the individual defendant, who may have personally committed the discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer."). The portion of the motion seeking to dismiss the Human Rights Law claims is denied.

**f.  Negligent Infliction of Emotional Distress**

Defendants move to dismiss Plaintiff's cause of action asserting the negligent

inflction of emotional distress.

> Under New York law, a plaintiff may establish [a claim for negligent inflction of emotional distress] in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory."  As to the bystander theory, a plaintiff may recover when: (1) [s]he is threatened with physical harm as a result of defendant's negligence; and (2) consequently suffers emotional injury from witnessing the death or serious bodily injury of a member of plaintiff's immediate family. As to the "direct duty" theory, a plaintiff states a claim where [s]he suffers emotional injury from defendant's breach of a duty which unreasonably endangered plaintiff's own physical safety. Plaintiff must establish a specific duty owed and not some amorphous, free-floating duty to society.

Zaidi v. Amerada Hess Corp., 2010 WL 2772499, at * 11 (E.D.N.Y.  July 12,

2010)(citations omitted).

Plaintiff's claim of negligent inflction of emotional distress alleges no facts to

support either the bystander or direct theory of liability.  The claim is, therefore, dismissed.

**g.  Intentional Inflction of Emotional Distress**

Defendant's also move to dismiss Plaintiff's cause of action asserting the intentional

inflction of emotional distress.

"Under New York law, a claim of intentional inflction of emotional distress requires:

(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a

substantial probability of causing, severe emotional distress; (3) a causal connection

between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT & T

Corp., 241 F.3d 242, 258 (2d Cir. 2001) (internal quotation marks omitted).  "[T]he

standard for stating a valid claim of intentional inflction of emotional distress is rigorous,

and difficult to satisfy. The conduct must be so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society." Id. (internal citations and quotation marks

omitted).

Plaintiff's allegation that she was unceremoniously discharged and replaced after a twenty-year career does not constitute the type of extreme or outrageous conduct sufficient to support a claim of intentional infliction of emotional distress under New York law. Accordingly, the claim is dismissed.

**h.  Prima Facie Tort**

Defendants also move to dismiss Plaintiff's claim asserting prima facie tort. Defendant challenges the cause of action on two grounds - (1) that it is unclear what conduct underlies the cause of action; and (2) Plaintiff has failed to allege damages with the required specificity.

A prima facie tort occurs under New York law when an individual inflicts intentional harm, resulting in special damages, without excuse or justification, by an act or series of acts which would otherwise be lawful. Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984); Weisshaus v. Fagan, 2010 WL 2813490, at *6 (S.D.N.Y. July 15, 2010). In order to prevail on this claim, Plaintiff must also show that Defendants' actions were motivated solely by "disinterested malevolence." See R.I. Island House, LLC v. North Town Phase II Houses, Inc., 858 N.Y.S.2d 372, 377 (2d Dep't  2008)(Under New York law, a "plaintiff [must] allege that disinterested malevolence was the sole motivation for the conduct of which [he or she] complain[s].") (citation omitted); McKenzie v. Dow Jones & Co., Inc., 355 Fed. Appx. 533, 536, 2009 WL 4640668, at *3 (2d Cir. Dec. 9, 2009)("New York courts have been very strict in holding that a cause of action for prima facie tort will not lie unless the actions complained of can be plausibly said to have been motivated *solely* by malice

towards the plaintiff.")(emphasis in original). "We have held that motives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a prima facie tort claim." Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990)(quoting Marcella v. ARP Films, Inc., 778 F.2d 112, 119 (2d Cir.1985)).

Furthermore, a party asserting a claim for prima facie tort must plead and prove special damages. Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985). Such damages are actual temporal damages causally related to the alleged acts. Lincoln First Bank v. Siegel, 60 A.D.2d 270, 280, 400 N.Y.S.2d 627 (4th Dep't 1977). Special damages "must be alleged with sufficient particularity to identify actual losses and be related causally to the tortious acts." Epifani v. Johnson, 65 A.D.3d 224, 233 (2nd Dept. 2009). A general allegation of damages is insufficient to maintain a claim of prima facie tort. See Mancuso v. Allergy Assocs. of Rochester, 70 A.D.3d 1499, 895 N.Y.S.2d 756 (4th Dep't 2010) (where complaint alleged a general statement that the plaintiff was damaged in the amount of not less than 1 million dollars, it failed to state a claim for prima facie tort because "damages pleaded in such round sums, without any attempt at itemization, must be deemed allegations of general damages"). The New York Court of Appeals has instructed that "[p]rima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs." Freihofer, 65 N.Y.2d at 143.

The conduct underlying Plaintiff's prima facie tort cause of action is merely an incorporation of the 87 paragraphs in the Amended Complaint that preceded the cause of action. See Am. Compl. ¶ 87 ("Plaintiff incorporates paragraphs "1" through "86" inclusive, as if fully set forth here."). Plaintiff provides no further specification as the action or actions underlying the claim, and the remainder of the allegations in the cause of action

21

merely parrot the legal elements of a prima facie cause of action. <u>See</u> <u>id.</u> ¶¶ 88-90.  While

Plaintiff alleges that "Defendants' conduct referenced herein was motivated solely by

malevolence toward the plaintiff," <u>id.</u> ¶ 90, without identification as to what conduct the

sentence refers to, the allegation is nothing more than a threadbare recital of an element

of the cause of action supported by nothing more than a conclusory statement.  Such a

bare bones pleading does not suffice to set forth a viable claim.  <u>See</u> <u>Harris v. Mills</u>, 572

F.3d 66, 72 (2d Cir. 2009).

Moreover, an incorporation of all the previous paragraphs of the Amended

Complaint necessarily incorporates the allegations that Defendants' conduct in abolishing

Plaintiff's position was motivated by considerations of her age.  Thus, assuming that the

complained-of conduct in *this* cause of action is the abolition of Plaintiff's position, the

claim fails under the requirement that the conduct be motivated *solely* by disinterested

malevolence.  Still further, the loss allegations in this cause of action are, for the most

part, stated in general terms and do not meet the specificity requirement for the cause of

action.  <u>See</u> Am. Compl. ¶ 91.[11]  Accordingly, the prima facie tort cause of action is

dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss claims in this action [Dkt.

# 10] is **GRANTED IN PART AND DENIED IN PART**.  The following claims are

**DISMISSED:**

---

[11]("91.  As a direct and proximate result of this conduct, plaintiff has suffered actual and special damages including monetary damages, loss wages equal to at least two years salary or approximately $254,000, plus pre-judgment interest, loss of benefits, being forced to take early retirement, emotional and psychological damages, embarrassment, humiliation, emotional distress and mental anguish and suffering requiring medical and doctor's care and prescription medication, and damage to her professional reputation.")

(1) that portion of the First Cause of Action alleging that Defendants deprived Plaintiff of her liberty interest in her good name, reputation and right to pursue her chosen career without due process of law;

(2) the Second Cause of Action (unlawful retaliation claim);

(3) the Third Cause of Action (breach of employment contract);

(4) the Seventh Cause of Action (negligent infliction of emotional distress);

(5) the Eighth Cause of Action (intentional infliction of emotional distress); and

(6) the Ninth Cause of Action (prima facie tort).

**The motion is denied in all other respects**.

**IT IS SO ORDERED**

DATED:November 19, 2010

Thomas J. McAvoy
Senior, U.S. District Judge