UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHRYN S. SEVER,

                      **Plaintiff,**

   -against-                                             10-CV-774

THE BOARD OF EDUCATION OF THE MAINE-
ENDWELL CENTRAL SCHOOL DISTRICT and
JOSEPH F. STONER, individually and in his official
capacity as Superintendent of Schools,

                      **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

      Plaintiff Kathryn S. Sever ("Plaintiff") commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and New York state law. See Am. Compl. dkt. # 5.  After filing an Answer, dkt. # 8, Defendants, the Board of Education of the Maine-Endwell Central School District ("District") and Joseph F. Stoner ("Stoner"), moved to dismiss various claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. # 10. The Court granted the motion in part and denied it in part.  See 11/19/10  Dec. & Ord., dkt. # 14.

      After the Decision on the Rule 12(c) motion, the following claims remained: the First

1

Cause of Action alleging that Plaintiff's constitutionally protected property interest in her tenured employment was denied without due process; the Fourth Cause of Action alleging a violation of N. Y. Education Law § 2510; the Fifth Cause of Action alleging age discrimination under the New York Human Rights Law ("HRL"); and the Sixth Cause of Action alleging that Stoner aided and abetted the age discrimination. Defendants now move for summary judgment seeking to dismiss the remaining claims. See dkt. # 17. Plaintiff has opposed the motion, dkt. # 20, and Defendants filed a reply. Dkt. # 21. For the reasons that follow, the motion is granted in part and denied in part.

## II. BACKGROUND

The Court previously set forth the factual underpinnings of Plaintiff's claims in the November 19, 2010 Decision and Order, familiarity with which is presumed. The current motion concerns whether the District's decision to abolish Plaintiff's former position as the Assistant Superintendent for Instruction ("ASI") was done properly under New York law, or whether it was a pretext for discrimination. A central focus of this dispute is Plaintiff's contention that she was replaced by Darlene Darrow ("Darrow") who held the title of Director of Leadership, Learning and Accountability ("DLLA"). Plaintiff also asserts that she was discriminated against on account of her age in her discharge, and in relation to receiving certain employment benefits. Because the Court assumes familiarity with the underlying background factual contentions, the Court will address the material facts only where relevant in discussing the claims, infra.

## III. STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed

facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Suffice it to say that where, as here, the intent of a party is in question but there is no direct evidence of discrimination, the Court must carefully examine the reasonable inferences that could be drawn from the totality of the circumstantial evidence and be cautious about granting summary judgment. Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006).

## IV.   DISCUSSION

### a.   Due Process & New York Education Law § 2510 Claims

"The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see Gould v. Board of Educ., 81 N.Y.2d 446, 451 (1993);[1] Blum v. Schlegel, 18 F.3d 1005, 1014 (2d Cir. 1994);[2] Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *30 (S.D.N.Y. Feb. 23, 2010)(Peck, M.J.).[3]  A "post-abolition Article 78 proceeding" would be sufficient

---

[1](Under New York law, a tenured teacher or administrator has a "protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of [the Education Law].")

[2]("Tenure, once conferred, is a property interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.") (citations omitted)

[3](Plaintiffs' statuses as tenured teachers provides them with a constitutionally protected property interest in their continued employment and is sufficient to trigger their due process rights.)(and cases cited therein)

3

only if Plaintiff's position was abolished for legitimate reasons and there was not a similar position filled by the Board. See Elmendorf v. Howell, 962 F. Supp. 326, 332 (N.D.N.Y. 1997);[4] see also Boddie v. Connecticut, 401 U.S. 371, 379 (1971);[5] Elmendorf and DeSimone with Fairbairn v. Bd. of Educ. of South Country Cent. Sch. Dist., 876 F. Supp. 432, 435 (E.D.N.Y. 1995).[6]

> New York Education Law § 2510 provides:
>
> If the board of education abolishes an office or position and creates another office or position for the performance of duties *similar* to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office or position thus created without reduction in salary or increment. . . .

N.Y. Ed. L. § 2510(1) (emphasis added).

"Similar" is a term given a "liberal interpretation," Mairs v. Board of Ed. of Island Park Union Free School Dist., 82 Misc. 2d 989 (Sup. Ct. Nassau Cty. 1975), with courts generally applying the 50% rule. In this regard, "'the test of whether the duties of the two positions are in fact similar is whether more than 50% of the functions to be performed by the incumbent of the new position are those which were performed by the [Plaintiff] in her

---

[4] Elmendorf, 962 F. Supp. at 332:

> After a review of the relevant case law, the Court cannot find as a matter of law that the plaintiff was not entitled to a pre-termination hearing. Although it seems clear that under New York law, when a position held by a tenured individual is abolished no pre-termination hearing is required, the Court finds that when there is a question of fact as to the similarity of the subsequently created position, the Court should not dispose of a concomitant due process claim on summary judgment.

(citations omitted).

[5] ("[T]he root requirement" of the Due Process Clause requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.")(emphasis in original)

[6] (denying a federal procedural due process claim for denial of a pre-abolition hearing where the plaintiff failed to show that the allegedly "similar" position to which she claimed entitlement was "created concurrently with the abolishment of her former job").

4

old position.'" Elmendorf, 962 F. Supp. at 331 (quoting Greenspan v. Dutchess County BOCES, 96 A.D. 2d 1028 (2d Dep't 1983)).

Plaintiff's due process claim boils down to whether Plaintiff's ASI position was abolished for legitimate reasons, or whether the District sidestepped New York Education Law by the subterfuge of calling her dismissal a position abolishment but really replacing her with Darrow in the DLLA position. See DeSimone v. Bd. of Educ., Huntington Union Free Sch. Dist., 604 F. Supp 1180, 1181-83 (E.D.N.Y. 1985).[7] Plaintiff's claim that Defendants violated New York Education Law § 2510 by replacing her with Darrow in the DLLA position turns on the resolution of whether the two positions were "similar."

When viewing the facts in the lights most favorable to Plaintiff, a reasonable fact finder could conclude that Plaintiff had not agreed to a "three year plan" for her retirement in exchange for 5% pay raises, as Defendants contend. See P. Rule 50-h Trans., p.33;[8] pp. 20, 27;[9] Stoner Dep. P. 57.[10] There is also sufficient evidence from which a reasonable

---

[7] DeSimone, 604 F. Supp. at 1184:

Plaintiff can prove that [she] has been deprived of property without due process if [she] demonstrates either (1) that at the time of the plaintiffs discharge there existed genuine factual issues bearing upon the similarity or dissimilarity of the positions; or (2) that at the time of plaintiff's discharge it could be said as a matter of law that the positions were similar within the meaning of Education Law § 2510(1). Defendant can prove that there was no deprivation of property without due process if it can show that at the time of the discharge it could be said as a matter of law that the positions were not similar within the meaning of Education Law § 2510(1).

[8] ("[A]fter 20 years of positive service that I had earned the right to retire when I chose.")

[9] ("If I needed to promise to retire or put anything in writing that I wasn't going to be able to do that because who knows what happens over the course of three years. . . . There was no particular plan at that point in time; occasionally we would have conversations, you know, hypothesizing what might -- you know, everything from continuing the status quo to changing job responsibilities; but those conversations were, in my mind, brainstorming, philosophical.")

[10] (agreeing that there was no writing between plaintiff and defendants saying that plaintiff would retire in three years in exchange for 5% raises)

5

fact finder could conclude that Plaintiff received her 5% raises based at least in part on merit, not because of an agreement to retire, Stoner Dep. p. 66,[11] and that the 5% raises were not drastically higher than raises paid to other administrators. Id. pp. 61-62.[12] Further, there is evidence that the parties continued to discuss the circumstances of Plaintiff's retirement during the summer of 2008 and again in November of 2008, see Sever Dep. p. 67-68, thereby providing a basis upon which a fact finder could conclude that Plaintiff did not end her employment of her own volition pursuant to a three year retirement plan. Moreover, the evidence indicates that Plaintiff's job was abolished on May 28, 2009, and, thereafter, Plaintiff submitted a letter wherein she stated that she was "forced to submit my resignation for the purpose of retirement…." Pl. 6/4/09 Ltr., ex. CC; see also Pl. Dep., p. 6.[13]

There is also evidence that would cast doubt on Defendants' contention that the abolition of Plaintiff's position was part of a District strategic plan driven by "economic and efficiency" concerns. On June 4, 2009, Plaintiff wrote to Stoner to "request a copy of any materials that set forth how the district plans to reassign the duties of my position to other positions." District counsel informed plaintiff on June 15, 2009 that "these plans are still subject to revision and are not yet final." Plaintiff apparently renewed her request on August 3, 2009 but did not receive a response from the District. Darrow was informed of her appointment to the DLLA position "just a few days before" she started in the position

---

[11](testifying that plaintiff's 5% raises was in exchange for an agreement to retire "and for a job well done up until that point")

[12](other administrators were getting 4-4.5% raises)

[13]("I felt I had no other option at that point.")

6

on August 18, 2009.  Darrow Dep. p. 10.  A reasonable inference from this evidence is that it was not until after Plaintiff submitted her resignation that the new position of DLLA was created and offered to Darrow.  Further, Darrow received a salary and raises roughly equivalent to Plaintiff, casting doubt on whether abolition of Plaintiff's position was for economic reasons,[14] and there is a dispute as to whether other positions beside Plaintiff's ASI position were abolished at the time of this purported reorganization.

Moreover, there is evidence indicating a close similarity between the functions and duties of Plaintiff's ASI position and Darrow's DLLA position. Darrow's secretary was Virginia "Ginnie" Spencer, who was also Plaintiff's secretary.  Darrow worked in Plaintiff's former office. The ASI job description indicated that Plaintiff "shall be responsible for the coordination and planning of the total curriculum, pre-kindergarten through grade 12 in all areas."  The job description for Darrow as DLLA included the responsibility to "oversee the planning and designing EK-12 curriculum .... " See also Darrow Dep. pp. 19, 135. Plaintiff and Darrow were both responsible for professional development at the District. Darrow Dep. pp. 87-88. Both Darrow and Plaintiff were responsible for reviewing and reporting student assessment scores to the Board of Education. Ex. C. Plaintiff and Darrow both attended "Regional State Meetings" in the areas of instruction, curriculum and professional development. Ex. F; Darrow Dep. p. 89.  Both Plaintiff and Darrow were the facilitators of the District's Numeracy and Planning Teams.  Both Plaintiff and Darrow were supervisors for Kathy Cornacchio, the District Mentor for the Induction Team, and there is evidence that both were in charge of the District's Home Instruction program and that each was

---

[14] Darrow's salary for 2008 was $100,514; for 2009, $111,647; and for 2010, $121,947. Plaintiff also notes that these raises constituted 10% raises per year. Plaintiff's final salary as ASI was $127,969.

involved in overseeing the area of Grant Applications for the District. There is also evidence indicating that both Plaintiff and Darrow were members of the Cabinet in their respective positions, and attended Principals and Directors Meetings, Literacy Meetings, Lead Teacher Meetings, K-12 Balanced Literacy, Organization for Instructional Representatives Meetings, Common Core Math Meetings, Superintendent Conference Day presentations, District Office Meetings, and Board of Education meetings.

Based on these similarities, and despite that Darrow testified that the two positions were 80% different, a reasonable fact finder could conclude that the duties of the DLLA exceeded the 50% similarity threshold required by case law interpreting New York Education Law § 2510.

Finally, there is a lack of evidence that indicates that Plaintiff was put on notice of, or offered, the DLLA position, or that the District sought out any candidates for the position other than Darrow. In fact, Ms. Spencer testified that the DLLA position was never posted and that it was not offered to anyone other than Darrow. Spencer Dep. P. 13.

Viewing the facts in the light most reasonable to Plaintiff, a reasonable fact finder could conclude that the District violated Plaintiff's constitutional due process rights by failing to provide her pre-deprivation due process, and violated New York Education Law § 2510(1) by failing to offer her the newly created DLLA position that was functionally similar to Plaintiff's AIS position. Therefore, summary judgment on these claims is denied. It will be for a jury to decide whether Plaintiff voluntarily retired, and whether the AIS and DLLA positions were similar within the meaning of New York Education Law § 2510. Elmendorf,

962 F. Supp. at 331-332.[15]

### b. N.Y. HRL Age Discrimination / Aiding and Abetting Claims

Defendants also move to dismiss Plaintiff's claims of age discrimination against the District, and the aiding and abetting claim against Stone.  Age discrimination claims brought under the New York Human Rights Law are analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); Leibowitz v. Cornell University, 584 F.3d 487, 498 n. 1 (2d Cir. 2009).  Under this framework, Plaintiff must first establish a prima facie case of discrimination. To establish a prima facie case of age discrimination under the New York's Human Rights Law, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination. Ferrante v. American Lung Assn., 90 N.Y.2d 623, 629 (1997).  If the plaintiff establishes a prima facie case, defendant bears the burden to "articulate some legitimate, nondiscriminatory reason for the [adverse act]." Leibowitz v. Cornell University, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).  A defendant's burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000).  If the defendant articulates a legitimate, nondiscriminatory

---

[15](Denying summary judgment, leaving the issue of similarity under N.Y. Ed. L. § 2510(1) to the finder of fact, and  writing:."[T]he Court finds that when there is a question of fact as to the similarity of the subsequently created position, the Court should not dispose of a concomitant due process claim on summary judgment.")

9

reason for the adverse action, the burden shifts to Plaintiff, in opposing a motion for summary judgment, to demonstrate that a reasonable jury could find, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gorzynski, 596 F.3d at 106 (internal quotation marks omitted).

Plaintiff's New York Human Rights Law age discrimination claims are asserted in the Fifth and Sixth Causes of Action. Plaintiff alleges in the Amended Complaint that at the relevant time she was 60 years old and the oldest administrator in the District office and cabinet; Defendants abolished her position as a pretext for terminating her employment; the true motivation for her discharge was her age; and younger administrators were allowed to buyback sick and vacation days on a yearly basis, but that Plaintiff was allowed to do so only if she agreed to retire. See Am. Compl. ¶¶ 64-71.  Plaintiff further asserts that Stoner aided and abetted the District's age discrimination. The Court will address the claims seriatim.

### (1) Termination

Plaintiff has not alleged that she replaced by a younger individual, see Am. Compl. ¶¶ 67-68; Pl. Counter Stat. Mat. Facts, and the Court finds no indication in the current record of Darrow's age.  Moreover, the Statements of Material Facts, including Plaintiff's Counter-Statement of Material Facts, are devoid of any indication of Darrow's age. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002);[16] Monahan

---

[16]("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted)

v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000).[17] Although Plaintiff alleges in the Amended Complaint that she was the "oldest administrator in the District office and cabinet," there is no indication whether Ms. Darrow was an administrator or a member of the District cabinet at the time that Plaintiff's position was abolished (i.e. before Ms. Darrow assumed her new position). Therefore, even assuming that Plaintiff was to establish that she was replaced by Darrow, she has not presented sufficient evidence to establish a claim of age discrimination related to her purported discharge and replacement. Accordingly, this aspect of Plaintiff's claim is dismissed.

### (2) Buyback Benefits

The Court turns next to the component of Plaintiff's claim asserting that she was treated differently than younger administrators with regard the District's decision to buy back employees' unused leave time. Am. Compl. ¶ 69. Plaintiff asserts that she was treated differently than "younger administrators" with regard to the District's unused leave buyback benefit in that she did not have the yearly option, and could receive the benefit only if she retired. She asserts in her Counter Statement of Material Facts that Stoner, Jeff L'Amoreaux (Assistant Superintendent for Business), and Mari Geisenhof (Director of Technology) received the yearly buyback benefit. See also Stoner Dep. pp. 45-46;[18] 63-

---

[17](The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted)

[18]Stoner testified:

Q: So your testimony is it was put in the contract for Mr. L'Amoreaux and Ms. Geisenhof that each year they could buy back a certain amount of days, is that correct?

A: And all other managerial/confidential, yes, but still had it that she [Sever] was - - upon retirement she would get a lump sum.

(continued...)

11

64.[19]

Defendants argue that this claim must fail because, after Plaintiff retired, she received the full monetary value of the buyback option. Therefore, Defendants contend, Plaintiff cannot establish that she suffered an adverse employment action such to give rise to an actionable age discrimination claim. This argument, viewed in the abstract and focusing only on the monetary value of the buyback benefit, is compelling. However, when viewed in the context that Plaintiff alleges, namely, that she was given the right to receive the buyback benefit only if she retired, Plaintiff has presented sufficient facts upon which a reasonable fact finder could conclude that she suffered an adverse employment action related to the benefits of her employment. That is, a finder of fact could conclude that the conditional leave time buyback benefit offered to her was used to coerce her retirement, but that younger administrators received the same benefit without this condition.

---

[18](...continued)
Q: And out of this group the only one who did not have that buyback right was Kathy Sever, is that fair to say?

A: Yes.

Stoner Dep. p. 45-46.

[19]Stoner testified:

Q: Looking back at Exhibit Z, she [Sever] is being offered the ability to buy back unused sick days if in return she would retire as of July 1,2008 is that correct?

A: July 1, 2009 which was the end other three time five percent raise.

Q: For the other administrators, lets say in the cabinet, L 'Amoreaux and Geisenhof, when they received the ability to buy back unused leave time, was it also in exchange for them agreeing to retire?

A: No, absolutely not.

Stoner Dep. p. 63-64.

Next, Defendants argue that, assuming Plaintiff can establish that she was treated differently from younger administrators, she fails to point to sufficient evidence from which a reasonable fact finder could conclude that consideration of Plaintiff's age was a motivation for Defendants' action.  The Court agrees.

The District has offered as a legitimate, nondiscriminatory reason for the difference in Plaintiff's buyback benefit compared to other employees.  The employer asserts that all of the other individuals to whom Plaintiff compares herself had different titles, performed different jobs, were hired at different times, received different amounts of base salary compensation, and negotiated their own individual employment contracts.  Moreover, the employer asserts that Plaintiff's "individually-negotiated employment contract specified that her bank of unused accumulated sick leave could be cashed in upon retirement at a rate of 1/260 of salary, for a total amount not to exceed $20,000. (Sever Depo., p. 80). [And that] Ms. Sever's 1/260 rate was identical to the District's other management - confidential employees. (Sever Depo., p. 81, 82). The difference [compare to the identified administrators] was solely a matter of timing." This satisfies the employer's burden and shifts the burden back to Plaintiff to present evidence from which a finder of fact could conclude that age was a motivation for offering her a different buyback benefit than offered to other administrators.  Plaintiff has not met this burden.

Plaintiff has not presented evidence indicating that she was similarly situated to the younger administrators who received the yearly buyback benefit.  Further, Plaintiff's age discrimination claim is based solely on the allegation that the administrators to whom she compares herself were younger in age.  However, the fact that other employees, even if younger, received a different benefit does not by itself establish that age was the

13

motivation for the differentiation. Mattera v. JPMorgan Chase Corp., 740 F. Supp.2d 561, 575 (S.D.N.Y. 2010).[20] Plaintiff has provided little beyond her own conclusions and supposition from which a reasonable fact finder could conclude that age was a motivation for the differentiation in the contract terms. But Plaintiff's feelings and perceptions of being discriminated against "are not evidence of discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999)(citation omitted); see id. at 448.[21] Simply stated, Plaintiff has failed to carry her ultimate burden on the claim. See Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir.1998).[22] Accordingly, Defendant's motion is granted and the age discrimination claim related to the buyback benefit is dismissed.

Because the age discrimination claims are dismissed, the aiding and abetting claims against Defendant Stoner are also dismissed.

---

[20]("Just because one is treated differently around the office, is granted different bonuses, or is terminated while others are retained does not, without more, demonstrate discrimination. Absent some evidence that other employees 'similarly situated in all material respects' were treated differently, the mere fact that one employee suffered some non-facially-discriminatory disparate treatment cannot prove pretext.")(quoting Ferrand v. Credit Lyonnais, 2003 WL 22251313, at *8 (S.D.N.Y. Sept.30, 2003), aff'd, 110 Fed. Appx. 160 (2d Cir. 2004))(other citations omitted).

[21] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[22] ("[A] jury cannot infer discrimination from thin air. And thin air is all the plaintiff has produced in the case before us. Norton proved (1) that he was over forty years old when he was fired; (2) that the person who fired him was under forty years of age; and (3) that one other person who was fired around the same time as Norton was also over forty.... [this] is simply not enough to support [a] jury's conclusion that he was fired because of his age.")

14

## V.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [Doc. #17] is **GRANTED in part and DENIED in part**. The motion is granted inasmuch as Plaintiff's New York Human Rights Law age discrimination claims against the Board of Education of the Maine-Endwell Central School District, and the concomitant claims against Defendant Stoner asserting that he aided and abetted the allegedly discriminatory actions, are **DISMISSED.** The motion is denied in all respects.

**IT IS SO ORDERED**

**Dated:** September 6, 2012

_____
Thomas J. McAvoy
Senior, U.S. District Judge